NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

JULIE A. BEBERMAN,

          Petitioner,

v.

SECRETARY OF STATE REX
TILLERSON, in his official capacity,

          Respondent.

Civ. No. 17-61

**OPINION**

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Respondent Secretary of State Rex Tillerson. (ECF No. 13.) Petitioner Julie A. Beberman opposes. (ECF No. 19.) The Court has decided the Motion on the written submissions of the parties, pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons stated herein, Respondent's Motion for Summary Judgment is granted.

## BACKGROUND

In this case, the Court is asked to review a decision by the Foreign Service Grievance Board ("FSGB") regarding a personnel matter in the United States Department of State (the "Department"). Petitioner is a Foreign Service Officer. (Resp't's Statement of Material Facts ("SMF") ¶ 1, ECF No. 15.) Because Petitioner failed to obtain tenure, her appointment was set to

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

expire on March 27, 2016, and on that date she was scheduled for separation from the Foreign Service. (*Id.* ¶¶ 2–3.) But Petitioner requested interim relief from separation. (*Id.* ¶ 4.) FSGB granted Petitioner temporary interim relief on March 9, 2016, while it considered her request for interim relief. (*Id.*; Pet'r's Counter-Statement of Material Facts ("CSMF"), Ex. 2, ECF No. 21-2.)

Subsequently, the Department ordered Petitioner to leave her post at the Embassy in Malabo, Equatorial Guinea, and assigned her to a position in the Bureau of African Affairs in Washington, DC. (Resp't's SMF ¶ 9; Pet'r's CSMF ¶¶ 9, 10, 30.)[2] This action was taken pursuant to the Department's Standard Operating Procedure ("SOP") D-01, which provides that employees on interim relief are to be returned from overseas to Washington, DC to work in a domestic assignment. (Record of Proceedings ("ROP") at 134, ECF No. 15-1.)[3] SOP D-01 was revised in October 2016. (Resp't's SMF ¶ 11.)

On November 30, 2016, Petitioner filed a grievance with the Department challenging her transfer. (ROP at 11–16.) Specifically, Petitioner alleged that (1) she was curtailed, as defined by the Foreign Affairs Manual ("FAM"), but the FAM's procedures for curtailment were not followed; (2) she was re-assigned without being allowed to participate in the ordinary bidding process as required by the FAM; (3) SOP D-01, which justified the transfer, is inconsistent with Department regulations, including the FAM, and results in arbitrary and capricious decision-making; and (4) the October 2016 revisions to SOP D-01 were targeted at Petitioner and made in retaliation for her previously filed grievances. (ROP at 11.)

---

[2] The parties disagree about when and how Petitioner was assigned to the position in the Bureau of African Affairs, and what terminology should be used to describe the documents enacting this decision. (*Compare* Resp't's SMF ¶ 9, *with* Pet'r's CSMF ¶¶ 9, 10, 30.)

[3] The Court utilizes the ROP page numbers, rather than the ECF page numbers.

2

The Department denied Petitioner's grievance, and Petitioner appealed to the FSGB. (*Id.* at 3–4, 6–9.) The FSGB dismissed the appeal, finding that (1, 2) the provisions of the FAM invoked by Petitioner did not apply to the Department's action; (3) because no provisions of the FAM applied, the Department was free to enact a SOP and to follow it; and (4) the revisions to SOP D-01 did not make Petitioner any worse off and so were not retaliatory. (*Id.* at 306–24.) The FSGB further found that, since no statute or regulation was violated, the FSGB lacked jurisdiction to negate an assignment decision. (*Id.*)[4]

Petitioner filed the present case on December 28, 2017, appealing the FSGB's decision to this Court. (Compl., ECF No. 1.) On March 19, 2018, Respondent moved for summary judgment. (ECF No. 13.) After receiving an extension of time (ECF Nos. 17–18), Petitioner opposed on May 9, 2018 (ECF No. 19), and Respondent replied on May 21, 2018 (ECF No. 22). This Motion is presently before the Court.

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a court is called to review agency action, "[t]he 'entire case' on review is a question of law" to be resolved on the basis of the agency record. *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001).

## DISCUSSION

Courts review final actions of the FSGB according to the standards set forth in the

---

[4] The FSGB also held that Petitioner's claims are barred by administrative collateral estoppel because they were previously litigated before the FSGB. (*Id.*) This may be described as an alternative holding, and because the Court finds the FSGB's other holdings satisfactory without consulting this one, the Court will not address the alternative holding.

3

Administrative Procedure Act ("APA"). 22 U.S.C. § 4140(a). The APA, in turn, commands the reviewing court to:

> hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]
> (D) without observance of procedure required by law . . . .

5 U.S.C. § 706(2). When reviewing agency action under the arbitrary and capricious standard, "a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must reach its decision by examining the relevant data, and it must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). When reviewing an agency's interpretation of a statute, the reviewing court must determine first whether the statute is clear and second whether the agency's interpretation of an unclear statute is reasonable. *Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs.*, 794 F.3d 383, 391 (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984)). However, a court defers to the agency's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." *N.J. Envtl. Fed'n v. U.S. Nuclear Regulatory Comm'n*, 645 F.3d 220, 228 (3d Cir. 2011) (quoting *Beazer E., Inc. v. U.S. E.P.A., Region III*, 963 F.2d 603, 606 (3d Cir. 1992)). Finally, the court closely reviews an agency's compliance with legally required procedures. *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 513 F. Supp. 2d 190, 196 (M.D. Pa. 2007).

Utilizing these standards of review, the Court examines each of the FSGB's five holdings

in turn, and in each case affirms.

## I. Requirements for Curtailment Under 3 FAM 2446(c)

The FAM defines curtailment as "shortening an employee's tour of duty from his or her assignment." 3 FAM 2446(c) states, "If the curtailment is not based on a request by a bureau or post, the Director General will notify the employee of the reasons for the curtailment, and will give the employee an opportunity to submit comments before making a decision." Because Petitioner was not given the opportunity to submit comments, she claims that this regulation was not followed.

As the FSGB rightly explained, 2446(c) does not apply to all curtailments, but rather only those derived from the authority of the Director General. This is made clear by the provisions surrounding 2446(c). Several sections of the FAM address curtailment: 3 FAM 2443 addresses curtailments of foreign assignments (both voluntarily and involuntarily at the request of the chief of mission), 3 FAM 2444 addresses curtailment of assignments in the United States, and 3 FAM 2446 addresses curtailment decisions made by the Director General. Subsection 2446(a) in particular states that, "The Director General has the authority to propose curtailment from any assignment sua sponte." Therefore, the notice and comment requirements of 2446(c) apply only where curtailment arises from the Director General's authority.[5]

Here, Petitioner's transfer from the Embassy in Malabo originated in the HR/EX office, not with the Director General. (Separation Order at 3, ECF No. 20-7.) 3 FAM 2446(c) therefore does not apply, and the FSGB was correct to reject Petitioner's assertion that she should have

---

[5] Petitioner claims that 2446(c) "fills in the gap when the curtailment is not based on a request by a bureau or post, and therefore, neither 3 FAM 2443 nor 3 FAM 2444 would apply." (Pet'r's Br. at 16, ECF No. 19.) But 3 FAM 2446 includes no language indicating gap filling. Rather, this section clearly provides the Director General's power to curtail, along with procedural checks on this power through a process of notice and comment.

5

been given the opportunity to submit comments under that subsection.

## II. Requirements for Assignment Under 3 FAM 2242.1(3)

Petitioner also claims that she should have been allowed to bid on assignments, rather than be assigned without bidding to the Bureau of African Affairs. 3 FAM 2242.1 states:

> The Office of Career Development and Assignments (HR/CDA) makes assignments for officer candidates as follows:
> (1) The first assignment of an officer candidate is identified by the Career Development Officers (CDO) during the candidate training program at the National Foreign Affairs Training Center (NFATC);
> (2) Career Development Officers also identify the second assignment of an officer candidate; and
> (3) These initial two assignments will be in accordance with tenuring requirements and other objectives of the career candidate program. *In subsequent assignments, officer candidates participate in the open assignments bidding process.* . . .

(emphasis added) This provision applies to regular assignments made by the Office of Career Development and Assignments. But in the present case the HR/EX office transferred Petitioner, and did so because she had been placed on temporary interim relief. The FSGB correctly concluded that the provisions of 3 FAM 2242.1 "obviously relate to the ordinary assignment procedures for entry level candidates," not to the transfer by the HR/EX office of employees on temporary interim relief. (ROP at 319.)[6]

## III. Validity of SOP D-01

According to Petitioner, the Department could not use SOP D-01 to justify its actions, because SOP D-01 is inconsistent with the two FAM provisions described above. But as previously discussed, the Court finds that these FAM provisions do not apply to Petitioner's

---

[6] Petitioner argues that 2442.1(3) should apply to her because she remains a career candidate, and so is "entitled to the same benefits as any other career candidate." (Pet'r's Br. at 2–6.) But this misses the point. The subsection does not apply, not because Petitioner is not a career candidate, but because the assignment was not made by the Office of Career Development and Assignments as a "routine assignment business process." (ROP at 319.)

6

situation; SOP D-01 is therefore not inconsistent with the FAM.

Petitioner also argues that:

> SOP D-01 invites arbitrary and capricious decision making because it allows decision-making through inaction. The Director General noted that "all employees on interim relief from separation are to be assigned to Washington to the bureau in which they last served overseas *unless their post requests that they remain at post and I approve that request.*" (emphasis added). Thus, an employee is removed from post, even without a finding that it is in the needs of the Service, if post remains silent.

But the fact that a post can effect a particular outcome through silence does not make this procedure arbitrary and capricious. Petitioner refers to an orderly process: Employees on interim relief will be assigned to Washington, DC as a default, but the post may, in its discretion, ask the Director General to override this default and have the employee remain at post. Petitioner may not find this to be the most effective system, or the system that best considers the needs of the Service, but it is not so irrational as to render it arbitrary and capricious.

The Court therefore affirms the FSGB's rejection of Petitioner's arguments concerning the validity of SOP D-01.

## IV. Retaliation through Revision of SOP D-01

Petitioner claims that the revisions made to SOP D-01 in October 2016 were targeted at her and in retaliation for her filing grievances in the past. Specifically, Petitioner sought to perform a detail at the Centers for Disease Control (the "CDC"), work outside the Washington, DC area, and bid on overseas positions while on temporary relief. The new version of SOP D-01 specifically prohibits these three options.

The old version of SOP D-01 reads in relevant part, "After receiving notification that an employee has received interim relief from separation, the employee should be returned to Washington on separation orders to work in a domestic assignment in the Department until the resolution of his/her grievance." (ROP at 146.) The new version reads, "Interim relief also does

7

not alter the standard practice of returning overseas employees to Washington, D.C. within 30 days of the notification of their separation. . . . Employees in interim relief status cannot bid, work overseas or outside the Washington, D.C. area, or be detailed to other agencies." (ROP at 134–35.)

The FSGB correctly held that these changes do not make Petitioner any worse off, and so cannot be deemed retaliatory. Petitioner argues in her Brief that the old version would have allowed her to serve on a detail with the CDC, while the new version prohibits this. But this is a misreading of the original version, which required employees to work "in the Department," that is, not in any other government agency. (ROP at 164.) The new version simply clarified that employees on interim relief could not work on a detail with another agency. Because the revisions to SOP D-01 did not harm Petitioner, they cannot give rise to a claim of retaliation.[7] The FSGB rightly dismissed Petitioner's retaliation claim.

## V. FSGB's Jurisdiction to Negate Assignments

The FSGB also found that, while it had jurisdiction to entertain Petitioner's appeal, it lacked jurisdiction to negate an assignment decision. The FSGB has jurisdiction to hear "grievances" as defined by statute. 22 U.S.C. § 4137. Crucially, "grievance" does not include "an

---

[7] It is not clear which statute, regulation, or other legal authority provides the basis for Petitioner's retaliation claim. Petitioner's brief cites Title VII cases. (*See* Pet'r's Br. at 19 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).) *See also Burlington*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.")). The FSGB analyzed "retaliation" as the term is commonly used. (ROP at 320 ("The common use of the term 'retaliation' denotes the infliction of harm or deprivation of some entitlement as punishment for asserting a legal right or making a demand for relief.").) One might also consult Black's Law Dictionary, which defines retaliation as, "The act of doing someone harm in return for actual or perceived injuries or wrongs; an instance of reprisal, requital, or revenge." (10th ed. 2014.) Under any of these approaches, retaliation requires that the retaliator impose some harm on the victim, which has not been demonstrated here.

8

individual assignment of a member . . . other than an assignment alleged to be contrary to law or regulation." 22 U.S.C. § 4131(b)(1). Because, as discussed, the Department's actions do not run afoul of any statute or regulation, the FSGB correctly ruled that it lacked jurisdiction to negate Petitioner's assignment.

## CONCLUSION

For the reasons stated herein, Respondent's Motion for Summary Judgment is granted. An appropriate Order will follow.

Date: 9/24/18               */s/ Anne E. Thompson*
                            ANNE E. THOMPSON, U.S.D.J.